UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-22908-COOKE
(CASE NO. 16-CR-20715-COOKE)
MAGISTRATE JUDGE REID

CRAIG SIZER,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE
## RE MOTION TO VACATE - 28 U.S.C. § 2255 FOLLOWING EVIDENTIARY HEARING

### I.      Introduction

Movant, **Craig Sizer**, has filed a *pro se* Amended Motion to Vacate pursuant to 28 U.S.C. § 2255, attacking the constitutionality of his conviction and sentence for conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349, entered following a guilty plea in **Case No. 16-CR-20715-Cooke**. [ECF No. 16]. This case has been referred to the Undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B), (C); S.D. Fla. Admin. Order 2019-02; and Rules 8 and 10 Governing Section 2255 Cases in the United States District Courts. [ECF No. 15]. For the reasons explained below, Movant is not entitled to habeas corpus relief.

### II. Claims

Construing the § 2255 Motion liberally, as afforded *pro se* litigants, pursuant to *Haines v. Kerner,* 404 U.S. 519 (1972), Movant raises the following grounds for relief:

1.      Ineffective assistance of counsel for failing to file a direct appeal as requested before the time to file an appeal expired. [ECF No. 16 at 4].

2.      Ineffective assistance of counsel for failing to challenge the testimony of a government witness at the sentencing hearing. [ECF No. 16 at 5].

3.      Ineffective assistance of counsel for failing to conduct an adequate investigation into Movant's case. [ECF No. 16 at 7].

### III. Procedural Background

### A. Stipulated Statement of Facts

The following facts are taken from the factual proffer statement signed by Movant:

Had this case proceeded to trial, the parties agree that the Government would have proven the following facts beyond a reasonable doubt. The parties agree that these facts, which are true, do not include all facts known to the Government and Defendant Craig Sizer relating to the Indictment. The parties agree that these facts are sufficient to prove the guilt of the Defendant as to Count 1 of the above-referenced Indictment.

From approximately September 2009, through approximately December 2015, in the Southern District of Florida and elsewhere, Craig Sizer conspired with others, including Miguel Mesa, Keith Houlihan, Charles K. Topping, and Anita Sgarro, to defraud over 700 individuals. This defendant and others participated in a scheme to defraud that raised approximately $23 million from the sale of stock tied to two corporations named Sanomedics International Holdings, Inc. "Sanomedics") and Fun Cool Free ("FCF").

This conspiracy occurred by means of materially false and fraudulent pretenses, as well as material omissions, to knowingly devise a scheme and artifice to defraud and to obtain money and property through the delivery of certain mail matter and through certain wire communications, in violation of Title 18, United States Code, Sections 1341, 1343, and 1349.

During the course of the conspiracy, Sanomedics claimed to develop and market a line of non-contact infrared thermometers principally for consumer home healthcare for children and, under the "ThermoPet" brand name, for dogs. Sanomedics publicly traded under the stock symbol "SIMH." FCF claimed it held a smartphone gaming portfolio with over 500 gaming applications.

Sizer was Sanomedics's cofounder, Chief Executive Officer, and a controlling shareholder of Sanomedics. He was also a controlling shareholder and officer and director of FCF. From around May 2009 until about May 2010, Sizer and Houlihan solicited, offered, and sold shares of Sanomedics stock to investors to raise capital for Sanomedics. Beginning around September 2009, Sizer hired Mesa to solicit, offer and sell shares of Sanomedics stock to investors via telemarketing. Mesa hired others, mainly salesmen and women, to solicit investors to purchase stock. Mesa,

with Sizer's permission, also hired Sgarro to operate her own group that sold the same stock. Mainly through the use of these "boiler rooms," opened and run by Mesa and Sgarro, this Defendant and his co-conspirators solicited investors to buy shares of Sanomedics stock in private placement offerings, and eventually, Sanomedics common stock traded on the Over-The-Counter Bulletin Board. Later, in 2014 to 2015, they also sold FCF stock.

Sizer and Mesa created sales "scripts" used to solicit potential investors. Sales agents under Mesa often added other material statements to their own scripts that they used to pitch the stock sales. To sell Sanomedics and FCF stock, this Defendant and his co-conspirators told potential investors that, for a limited time only, a "limited number" of shares of Sanomedics stock were available to them at a steep discount to the price of shares trading on the OTCBB. The defendants knew this to be false because Sizer and others controlled the number of Sanomedics and FCF shares and often authorized "stock splits" to generate more shares. Investors were also told that no commissions or fees were charged, when, in fact, Mesa and his team only made money through commissions taken from investor proceeds.

During the conspiracy, Sizer used the money received from investors for, among other things, sales commissions, fees, and other monetary distributions to himself, to sales agent managers, and others they hired, including Mesa. Sizer paid Mesa 50% of all money raised by Mesa and his sales people in Mesa's boiler room. Mesa used this money to pay himself, his salespeople, including this Defendant, and others, a commission on sales of stock. Pursuant to his agreement with the salespeople he hired, Mesa paid all salespeople by commission, directly tied to a salesperson's given sale of stock to a particular investor. No salesperson was paid with stock or salary. All combined, the defendants and their co-conspirators used approximately 80% of investor proceeds in undisclosed commissions and fees.

To induce investors to provide money to the defendants and their co-conspirators, this Defendant and his co-conspirators made numerous materially false and fraudulent statements to investors, including, but not limited to: (a) That no commission or fees would be charged to investors; (b) That sales agents were employees of Sanomedics and FCF, providing investors a unique opportunity to purchase a "limited number of shares" directly from the company; (c) That Sanomedics was a "safe investment," "profitable investment," and one where "you won't lose money"; and (d) That J.S., a former CEO of Apple Inc. and former president of PepsiCo, was the largest Sanomedics investor and was on the Sanomedics Board of Directors.

They similarly lied about J.S. and other people's affiliation with Sanomedics and FCF, and lied to investors by telling them that FCF had a partnership with Apple Inc.

[Cr ECF No. 171].

3

**B. Indictment**

On September 22, 2016, Movant and other individuals were charged by a grand jury in the United States District Court for the Southern District of Florida under a multi-count indictment with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Count 1), and related substantive charges. [Cr ECF No. 3].

**C. Plea Agreement**

Pursuant to the terms of a negotiated written plea agreement, Movant agreed to plead guilty to Count 1 and the government agreed to dismiss the remaining charges after sentencing. [Cr ECF No. 170 at 1]. The government also agreed to recommend up to a three-level reduction to Movant's applicable base offense level, under the guidelines, based on his timely acceptance of responsibility. [*Id.* at 3].

Movant and the government agreed, although not binding on the court or probation office, to jointly recommend that: (1) the Movant's base offense level would be set at 7 under U.S.S.G. § 2B1.1; (2) twenty levels would be added because the loss involved more than $9.5 million but less than $25 million; (3) because the crime resulted in substantial financial hardship to five or more victims, four levels would be added under U.S.S.G. § 2B1.1(b)(2)(B); (4) because the Movant was an organizer and leader of a criminal activity that involved 5 or more participants and was otherwise extensive, four levels would be added pursuant to U.S.S.G. § 3B1.1(a); and (5) because the crime involved a violation of securities law while the Movant was an officer and director of a publicly traded company, four levels would be added pursuant to U.S.S.G. § 2B1.1(b)(19). [*Id.* at 4].

In the plea agreement, Movant acknowledged that the court was not bound by and could depart from the advisory guideline range determined under the U.S. Sentencing Guidelines, that

the court could tailor the ultimate sentence imposed, by considering other factors, and could impose any sentence within and up to the statutory maximum authorized by law for the offense of conviction. [*Id.* at 1-2].

Movant agreed that under Count 1 he was facing a statutory maximum of 20 years' imprisonment, followed by three years of supervised release and a fine of up to $250,000. [*Id.* at 2]. He agreed that any estimate of the probable sentencing range or sentence, whether from defense counsel, the government, or probation officer, was a prediction and not a promise, and was not binding on the court. [*Id.* at 4-5]. The agreement also included cooperation language and gave the government the right to evaluate Movant's cooperation and file a motion pursuant to U.S.S.G. § 5K1.1, if appropriate. [*Id.* at 6].

Finally, Movant affirmed that under 18 U.S.C. § 3742 and 28 U.S.C. § 1291 he had the right to appeal the sentence imposed, but in exchange for the undertakings made by the government, Movant was waiving the right to appeal the sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless it exceeded the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the court establishes at sentencing. [*Id.* at 10].

### D. Change of Plea Hearing

At the change of plea proceeding, after being sworn, Movant provided background information. [CR ECF No. 876 at 3]. Movant acknowledged that he had not been treated for any mental illness. [*Id.*]. He had been treated for alcohol and cocaine addiction in the past. [*Id.* at 3-4]. He had not taken any drugs or alcohol during the prior forty-eight hours. [*Id.* at 4]. Defense counsel stated that, in his opinion, Movant was competent to proceed. [*Id.*].

Next, Movant acknowledged he had fully discussed the indictment and plea agreement with counsel. [*Id.*]. Movant agreed that he was satisfied with counsel. [*Id.* at 5]. The Court next read the charges under Count 1. [*Id.*]. Movant stated he understood the charges and was pleading guilty to them. [*Id.*].

He understood that he was facing up to 20 years in prison, followed by supervised release of up to three years, and a $250,000 fine. [*Id.*]. Movant acknowledged that counsel had fully reviewed the advisory sentencing guidelines with him. [*Id.* at 6]. Movant understood that he could not withdraw his plea simply because he did not like his ultimate sentence. [*Id.*].

The Court then turned to the appellate waiver. [*Id.* at 6-7]. Movant stated that he understood the waiver. [*Id.* at 7].

Movant denied being forced or threatened by anyone to change his plea to guilty. [*Id.*]. He confirmed that he was pleading guilty because he had discussed the matter with his attorney and concluded it was the best thing to do in this case. [*Id.*]. No one had promised him anything not included in the written plea agreement. [*Id.* at 8].

The prosecutor next summarized the essential terms of the written plea agreement. [*Id.* at 7-8]. Movant confirmed that the prosecutor's summary was accurate. [*Id.* at 8].

Regarding the waiver of his constitutional rights, Movant understood that he was giving up the right to a jury trial, to require the government to prove the charges beyond a reasonable doubt, to have an attorney assist in his defense, to cross-examine prosecution witnesses, present witnesses on his own behalf, and to testify, or not, at trial. [*Id.*]. Knowing all of this, Movant still affirmed he wanted to plead guilty. [*Id.*].

The Court next turned to the stipulated factual proffer. [*Id.* at 10]. Movant's counsel stipulated that the factual proffer was true and correct. [*Id.*]. Defense counsel explained that he had

reviewed the statement of facts with Movant. [*Id.* at 10-11]. Movant agreed that the government would be able to prove the facts necessary to find him guilty of Count 1. [*Id.* at 11].

At the end of the colloquy, the Court again asked Movant how he wanted to plead to Count 1 and Movant answered "Guilty." [*Id.*]. The Court then found the guilty plea freely and voluntarily entered, and that there was a factual basis for the plea based upon the government's proffer and Movant's acknowledgment. [*Id.*]. The Court adjudicated Movant guilty of Count 1. [*Id.*].

### E. Pre-Sentence Investigation Report

Prior to sentencing, a Pre-Sentence Investigation Report ("PSI") was prepared which computed Movant's base offense level at a level 7, pursuant to USSG § 2B1.1(a)(1). [PSI ¶ 66].

Because the loss was more than $9,500,000 but not more than $25,000,000, the offense level is increased by 20 levels, § 2B1.1(b)(1)(K). [PSI ¶ 67]. Movant was responsible for a loss of 24,500,000. [PSI ¶ 67]. Because the offense resulted in substantial financial hardship to five or more victims, the offense level was increased by four levels, § 2B1.1(b)(2)(B). [PSI ¶ 68]. Because the offense the offense otherwise involved sophisticated means and Movant intentionally engaged in or caused the conduct constituting sophisticated means, the offense level was increased by two levels, § 2B1.1(b)(10)(C). [PSI ¶ 69]. Because the offense involved a violation of securities law and, at the time of the offense, Movant was an officer or a director of a publicly traded company, the offense level was increased by four levels, § 2B1.1(b)(19)(A)(i). [PSI ¶ 70]. Because Movant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, the offense level was decreased by four levels, § 3B1.1(a). [PSI ¶ 72].

Three levels were deducted from the adjusted guideline based on Movant's timely acceptance of responsibility, resulting in a total adjusted offense level of 38. [PSI ¶¶ 76-78].

Next, it was determined Movant had a total of 10 criminal history points, resulting in a criminal history category V. [PSI ¶ 95]. The PSI was amended post-sentencing to note that the Court had determined that for guidelines purposes, the Movant's criminal history was over-represented and Movant had a criminal history category of 2. [PSI ¶ 96].

The statutory maximum term of imprisonment was 20 years, 18 U.S.C. §§ 1341 and 1343. [PSI ¶ 142]. Based on a total offense level 38 and a criminal history category V, the guideline imprisonment range was 360 months to life. [PSI ¶ 98]. However, the PSI noted that because the statutorily authorized maximum sentence of 20 years is less than the minimum of the applicable guideline range, the sentence was 240 months, § 5G1.1(a). [*Id.*].

Defense counsel filed objections to the PSI, arguing that the Movant should have a criminal history category 1, resulting in a sentencing guideline range of 188 to 235 months. [CR ECF No. 336]. Defense counsel also objected to the sophisticated means enhancement. [*Id.*].

### F. Sentencing

On July 26, 2017, Movant appeared for sentencing. [Cr ECF No. 880]. After hearing arguments, the court next found that Movant "would be in a Criminal History Category II, 262 to 327 months." [*Id.* at 10]. Next, the government presented its argument regarding the U.S.S.G. § 5K1.1 motion asking the court for a twenty percent reduction in the sentence. [*Id.* at 16-19]. Defense counsel argued for a higher percent reduction. [*Id.* at 11-16].

The Court sentenced Movant below the guideline range to a term of 180 months' as to Count 1. [*Id.* at 29]. The Court informed Movant that if he wished to file an appeal, he was required to file a notice of appeal within 14 days. [*Id.* at 30].

The written Judgment was entered on August 4, 2017, reflecting the total term of 180 months' imprisonment. [CR ECF No. 559].

8

No direct appeal was prosecuted. Therefore, his Judgment became final on **Monday, September 18, 2017**, fourteen days after the entry of the judgment, when time expired for filing a notice of appeal. *See* Fed. R. App. P. 4(b)(1)(A)(i); *see also Adams v. United States*, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).

### G. Motion to Vacate

Movant returned to this Court, filing a timely § 2255 Motion to Vacate, at the latest, on **July 17, 2018**, under the mailbox rule.[1] [ECF No. 1 at 14]. In Claim 1, Movant argues that counsel was ineffective for failing to file a direct appeal, as requested. [*Id.* at 1, 11-12]. Movant filed several amended motions. [CV ECF Nos. 7, 11]. This Court entered an Order for one final amended motion. [CV ECF No. 13]. As a result, Petitioner filed his Final Amended Motion on January 10, 2019. [CV ECF No. 16]. Although Movant's Final Amended Motion was filed after the expiration of the one-year statute of limitations, he raises the same three ineffective assistance claims that he raised in his original timely motion. *See* [ECF No. 1 at 4; ECF No. 16 at 4-7]. As a result, it relates back pursuant to *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000). Movant also raised Claims 2 and 3 in his original and amended motions.

On July 10, 2019, this Court issued an Order setting an evidentiary hearing and appointing Richard Della Fera to represent Movant. [ECF No. 19]. Movant's appointed counsel filed a notice of a potential conflict of interest. [CV ECF No. 21]. This Court granted the motion and appointed Martin Alan Feigenbaum. [ECF No. 22]. Movant next retained private counsel, namely, Benson

---

[1] Under the prison mailbox rule, absent evidence to the contrary, like prison logs or other records, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *See* Fed. R. App. P. 4(c)(1) ("If an inmate confined in an institution files a notice of appeal in either a civil or a criminal case, the notice is timely if it is deposited in the institution's internal mail system on or before the last day for filing."); *see also Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

B. Weintraub and Jeremy Brian Gordon. [CV ECF No. 28]. As a result, this Court terminated Mr. Feigenbaum. [CV ECF No. 30].

Movant and the government each filed pre-hearing narrative statements. [ECF No. 31, 32]. The parties appeared for an evidentiary hearing on September 26, 2019. [ECF No. 35, 9/26/19 Evidentiary Hearing Transcript]. After the hearing, each party filed an additional brief. *See* [ECF Nos. 36, 37].

## IV. Standard of Review

### A. Section 2255

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on a final judgment, pursuant to 28 U.S.C. § 2255, are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under § 2255 is reserved for transgressions of constitutional rights, and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 165 (1982). If a court finds a claim under § 2255 valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial, or correct the sentence." 28 U.S.C. § 2255. The burden of proof is on a movant, not the government, to establish that vacatur of the conviction or sentence is required. *See Beeman v. United States,* 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

### B. Guilty Plea Principles

Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary, knowing, and intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *See Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *United States v. Ruiz,* 536 U.S. 622, 629 (2002). To be knowing and voluntary: (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *See United States v. Moriarty,* 429 F.3d 1012, 1019 (11th Cir. 2005).

After the plea has been entered, a criminal defendant may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only: (1) raise jurisdictional issues, *see United States v. Patti,* 337 F.3d 1317, 1320 (11th Cir. 2003); (2) attack the voluntary and knowing character of the guilty plea, *see Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992); or, (3) challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *see United States v. Fairchild,* 803 F.2d 1121, 1123 (11th Cir. 1986). Thus, a voluntary and intelligent guilty plea must stand unless induced by misrepresentations made to the accused by the court, prosecutor, or his own counsel. *See Brady v. United States,* 397 U.S. 742, 748 (1970).

Courts apply a "strong presumption" that statements made by a defendant during a change of plea colloquy are true. "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

### C. Ineffective Assistance of Counsel Principles

Regarding claims challenging counsel's effectiveness, the law is well settled that a criminal defendant is entitled to the effective assistance of competent counsel before deciding whether to plead guilty. *See Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 694 (1984). However, if the movant cannot meet one of *Strickland's* prongs, the court does not need to address the other prong. *See id.* at 697; *see also Brown v. United States,* 720 F.3d 1316 (11th Cir. 2013).

To show deficient performance, a movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted). In the guilty plea context, to show prejudice, the movant must establish that, but for counsel's deficient performance, "there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1984). Prejudice in the sentencing context requires a showing that the sentence would have been less severe. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001).

A movant, however, is not prejudiced by counsel's failure to raise non-meritorious claims. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). Courts may not vacate a conviction or sentence solely because the outcome would have been different, but for counsel's error, as it may grant the defendant a windfall to which the law does not entitle him. *See Lockhart v. Fretwell*, 506 U.S. 364, 369-70, (1993); *see also Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail ... are few and far

between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). The *Strickland* test does not require a showing of what the best or good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as counsel acted. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). In retrospect, where counsel's decision appears to have been unwise, it will have been ineffective only if it was "so patently unreasonable that no competent attorney would have chosen it." *Id.* at 1099 (citations omitted).

A meritorious claim of ineffective assistance of counsel can also constitute cause for a procedurally defaulted claim. *See United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly raised by way of a § 2255 motion regardless of whether they could have been brought on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Patterson*, 595 F.3d, 1324, 1328 (11th Cir. 2010).

## V. Discussion: Evidentiary Hearing

### A. Movant's Claim

In **Claim 1**, Movant asserts that counsel was ineffective for failing to file a direct appeal as requested. [ECF No. 16 at 4]. Specifically, Movant argues:

> Because trial counsel's acts or omissions of not pursuing the sentence variance he had assured he would before the sentencing court passed its judgment, Mr. Sizer told his trial counsel, at the defense table, he wanted to appeal with regard to the intended loss. Trial counsel smiled and indicated he would. However, Mr. Sizer discovered weeks later that in fact he had not.

[ECF No. 16, at 14].

On its face, Movant's § 2255 final amended motion provides facts which may support his claim that his lawyer erroneously failed to file a direct appeal. As a result, the claim was not conclusively refuted by the record, and warranted further evidentiary findings.

### B. Failure to File Requested Direct Appeal

13

The law is clear that counsel's failure to file a direct appeal after being <u>requested</u> to do so by his client is a *per se* constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("[W]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Id.* at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. *See id.*

Even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, a court must inquire into whether counsel in fact consulted with the defendant about an appeal. *Id.* at 478. "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case.... If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *See id.* (citing *Flores-Ortega*, 528 U.S. at 480). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.

In the case of an appeal following a guilty plea, the defendant is entitled to an out-of-time

14

appeal of sentencing issues only. *See id.* at 483. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in § 2255 proceedings." *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995).

### C. Evidentiary Hearing Testimony

**Movant's Testimony**

The Movant provided the following testimony under oath and after expressly waiving the attorney/client privilege with his prior counsel, Dennis Nicholas Urbano, Esq. [Cv ECF No. 35 at 7]. He always felt that he had no choice but to enter a plea and continue working with federal agents to decrease his sentence exposure. [*Id.*].

Immediately after sentencing, while still sitting at the defense table, Movant told his lawyer "I wanted to file an appeal." [*Id.* at 8]. Mr. Urbano then walked towards the judge and Movant exited the courtroom. [*Id.*]. He and Mr. Urbano spoke again a few minutes later outside the courtroom. [*Id.*]. His lawyer explained that the agents wanted him to continue to cooperate and, therefore, an appeal would not be a good idea. [*Id.* at 9]. When Movant asked why not, Mr. Urbano explained that Movant could face more time and "the best chance you got is to continue working with the agents." [*Id.*]. Movant again summarized the exchange as follows:

> I said, listen, I wanted to file an appeal. He told me the reasons why he didn't think it was a good idea, and after he told me about the agents, he thought it was going to be the best shot I said, I said I still wanted to file an appeal and we parted ways. It was a brief exchange.

[*Id.* at 13-14]. Mr. Urbano did not answer yes or no to Movant's request to file an appeal. [*Id.* at 14].

Movant wanted to appeal because he always believed that the amount of loss was incorrect. [*Id.* at 10-11]. He was never able to review all the government's discovery, in order to understand

the loss amount calculations, because he could not open the computer disks he received. [*Id.*]. He also thought an appeal was appropriate because some of his co-defendants received significantly lower sentences. [*Id.* at 12-13].

After his sentencing hearing, he continued working with federal agents. [*Id.* at 15]. He assumed that his lawyer had already filed a notice of appeal. [*Id.* at 16].

On cross-examination, Movant conceded that he was not in custody immediately after his sentencing hearing. [*Id.* at 28]. However, he did not attempt to meet with his lawyer. [*Id.* at 29-30]. He did not send Mr. Urbano a letter or email asking about the status of an appeal. [*Id.* at 30]. He was aware of the specific loss amount before his change of plea hearing and he told his lawyer that he felt the amount should be lower. [*Id.* at 31].

**Maria Sizer's Testimony**

Movant's wife, Maria Sizer, testified to the following. [*Id.* at 33]. She was standing with her husband and his attorney, Mr. Urbano, immediately after the court imposed the sentence and Movant said, "don't cry because we are going to appeal." [*Id.* at 35]. Subsequently, Movant told her they needed to reach his attorney to work on the appeal. [*Id.* at 36]. She believed a direct appeal about the amount of loss was going to take place. [*Id.* at 36-37]. She attempted to reach Mr. Urbino by telephone, without success. [*Id.* at 44].

**Dennis Nicholas Urbano's Testimony**

Movant's former counsel, Dennis Urbano, Esq., testified to the following during direct examination. [*Id.* at 48]. He has been practicing law for 43 years. [*Id.*]. He went into private practice in 1980 and has been handling federal criminal cases ever since. [*Id.* at 49]. He defends people throughout the United States. [*Id.*].

Mr. Urbano began representing Movant on October 18, 2016. [*Id.*]. Movant and his co-

defendants defrauded approximately 700 individuals of $22 million. [*Id.* at 50]. He received extensive discovery from the government. [*Id.* at 50-51]. He and Movant met at least a dozen times at Mr. Urbano's office to review the discovery. [*Id.* at 52]. Movant was one of the most intelligent clients he had ever represented. [*Id.* at 53]. Movant completely understood the discovery. [*Id.*].

Mr. Urbano reviewed the plea agreement and factual proffer in detail with Movant. [*Id.*]. Because Movant was detail oriented, he would have voiced any issues he had to Mr. Urbano. [*Id.* at 54]. Movant understood and believed the factual proffer was accurate. [*Id.* at 55]. Movant understood that he was facing significantly more time than he ultimately received. [*Id.*].

Movant understood that the loss amount calculated by the government was over 20 million. [*Id.*]. Mr. Urbano and Movant decided to accept the amount and focus on challenging his prior record at sentencing. [*Id.* at 56-57].

Mr. Urbano reviewed the appellate waiver included in the plea agreement with Movant, which Movant understood. [*Id.* at 57]. Mr. Urbano witnessed Movant sign the plea agreement and factual proffer. [*Id.* at 58]. Movant understood everything at the change of plea hearing. [*Id.* at 58].

Mr. Urbano reviewed the PSI with Movant prior to sentencing. [*Id.* at 59]. He reviewed the sentencing guidelines and Movant's sentence exposure. [*Id.*]. The strategy was to attack the criminal history category. [*Id.* at 59-60]. Movant was facing 360 months' imprisonment to life under category V, however, the plea agreement imposed a maximum of twenty years. [*Id.* at 60].

At the sentencing hearing, the government sought a twenty percent reduction based on Movant's cooperation and Judge Cooke gave Movant a twenty-five percent reduction. [*Id.* at 62-63]. Mr. Urbano found the 180-month (fifteen-year) sentence to be a good result. [*Id.* at 63].

At the conclusion of the sentencing hearing, Movant told Mr. Urbano at the defense table that he wanted a lower sentence but understood the sentence imposed was the best he would get.

[*Id.* at 64]. He accepted the sentence and understood that if he continued to cooperate, he might be entitled to an additional reduction. [*Id.*].

When asked whether the word "appeal" ever came out of Movant's mouth, Mr. Urbano testified, "No, absolutely not." [*Id.* at 67]. If Movant had asked him to file an appeal, he would have. [*Id.*]. He is bound to file a notice of appeal as a CJA attorney and is paid more if he does so. [*Id.* at 68]. No one else asked him to file an appeal on Movant's behalf. [*Id.*]. He did not receive any written correspondence asking him to file a notice of appeal in Movant's case. [*Id.* at 69].

### D. Analysis

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the Undersigned accepts the following version of events.

The Movant's testimony that he asked counsel to file a notice of appeal at the sentencing hearing or at any time before or after sentencing is not credible. At best, Movant expressed his dissatisfaction with his sentence and after Mr. Urbano suggested the best course of action was for Movant to continue cooperating with the government, rather than pursuing an appeal, Movant did not pursue an appeal. This is insufficient evidence of ineffective assistance of counsel for failing to file a direct appeal.

The Undersigned found Mr. Urbano's testimony to be credible in all respects. Petitioner and Mr. Urbano met prior to the change of plea hearing and carefully reviewed the appellate waiver. Mr. Urbano testified that Movant was one of the most intelligent individuals he had ever represented. This is supported by Movant's testimony at the change of plea hearing that he understood the waiver and had discussed the waiver with counsel. [CR ECF No. 876 at 6-7].

Furthermore, the facts do not support the position that defense counsel had a duty to consult Movant following sentencing regarding a direct appeal. The Movant was facing a life sentence had

18

he proceeded to trial. According to the PSI, the advisory guideline range was 360 months' to life imprisonment. [PSI ¶ 98]. The Court ultimately imposed 180 months' imprisonment. *See* [Cr ECF No. 559]. By entering the plea agreement, which included the appellate waiver, Movant received a sentence under the sentencing guidelines. [*Id.*].

Based on the foregoing, it is reasonable to conclude that the Movant did not expressly ask Mr. Urbano file a notice or appeal and/or the Movant did not make any statements which would have triggered his attorney's duty to consult him regarding the filing of a direct appeal. Furthermore, the testimony which this Court found credible does not establish that (1) a rational convicted defendant would want to appeal, or (2) the convicted defendant reasonably demonstrated to counsel an interest in appealing. Thus, the Court finds that counsel was not ineffective, and the Movant is not entitled to an out-of-time appeal.

## VI. Remaining Claims Re Ineffectiveness of Counsel

Under **Claim 2**, Movant alleges ineffective assistance of counsel for failing to challenge the testimony of a government witness at the sentencing hearing. [ECF No. 16 at 5]. Specifically, testimony of the government witness contained false assertions and provided a distorted and prejudicial view of Movant. [*Id.*].

Bare and conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd*, 697 F.3d at 1333-34; *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, a § 2255 movant must provide factual support for his contentions regarding counsel's performance. *See Smith v. White,* 815 F.2d 1401, 1406-07 (11th Cir.1987).

Movant fails to do so here. Movant does not identify the witness or describe any specific testimony. [*Id.*]. Instead, he asserts in a conclusory manner that the "false representation[s], under the preponderance of evidence standard, allowed the Court to reach its findings of fact and

conclusion of law under [the] wrong framework." [*Id.*].

Movant's self-serving statements that counsel provided ineffective assistance at the sentencing hearing are conclusory with no support whatever in the record. Because his arguments are wholly conclusory, he is not entitled to relief. *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (citation omitted)); *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) (section 2255 movant's allegations must satisfy the "heightened pleading requirement[s]" under R. 2, Rules Governing Section 2255 Proceedings).

Under **Claim 3**, Movant alleges ineffective assistance of counsel for failing to conduct an adequate investigation into Movant's case prior to his change of plea hearing. [ECF No. 16 at 7]. Movant's argument is refuted by the record.

During the change of plea hearing, the Court explicitly questioned Movant, while he was under oath, if he was satisfied with defense counsel's representation.

**The Court**: And are you satisfied with the advice that you have received?

**Movant**: Yes.

**The Court**: Is there anything about your representation that you're not satisfied with?

**Movant**: No.

**The Court**: Sir, are you pleading guilty because you've discussed this with your attorney, and you think this is the best thing for you to do?

**Movant**: Yes.

[Cr ECF No. 879 at 5]. Movant made no mention of counsel's failure to properly investigate his case prior to the change of plea hearing.

It is well-settled that there is a strong presumption that statements made during a plea

colloquy are true. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Moreover, when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false. *See Rogers*, 848 F.2d at 168. Defense counsel's alleged failure to investigate would have contradicted facts that Movant swore under oath were true. This does not constitute deficient performance. In light of the foregoing, defense counsel was not ineffective in failing to investigate Movant's case.

### VI. Cautionary Instruction Regarding the *Clisby* Rule

The Court is mindful of the *Clisby*[2] rule that requires district courts to address and resolve all claims raised in habeas corpus proceedings, regardless of whether relief is granted or denied. *See Rhode v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that *Clisby* applies to § 2255 proceedings). However, nothing in *Clisby* requires consideration of claims or arguments raised for the first time in objections. Therefore, if the movant attempts to raise arguments or further factual support for his claims in objections, the Court should exercise its broad discretion and refuse to consider the arguments not raised before the magistrate judge in the first instance. *See Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (citing *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006) (finding no abuse of discretion by the district court in declining to consider timeliness argument that was not presented to the magistrate judge)). This is so because "[P]arties must take before the magistrate, 'not only their best shot but all of the shots.'" *See Borden v. Sec'y of Health & Human Serv.*, 836 F.2d 4, 6 (1st Cir. 1987) (quoting *Singh v. Superintending Sch. Comm. of City of Portland*, 593 F. Supp. 1315, 1318 (D. Me. Sept. 27, 1984)).

---

[2]*Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992).

## VII. Certificate of Appealability

A movant seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); *Wilkinson v. Dotson*, 544 U.S. 74, 78-83 (2005)). This Court should issue a COA only if Movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected Movant's constitutional claims on the merits, Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, Movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Upon consideration of the record as a whole, this Court should deny a COA. Notwithstanding, if Movant does not agree, he may bring this argument to the attention of the District Judge in objections.

## VIII. Conclusions and Recommendations

Based on the above, it is recommended that:

1.      the Amended Motion to Vacate [ECF No. 16] be DENIED on the merits;

2.      final judgment be entered in favor of the Respondent;

3.      that no certificate of appealability issue; and,

4..     the case closed.

Any party who objects to this recommendation or anything in it must, within fourteen (14)

days of the date of service of this document, file specific written objections with the Clerk of this

Court. Failure to do so will bar a *de novo* determination by the District Judge of anything in the

recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.

*See* 28 U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn,* 474 U.S. 140, 149 (1985); *RTC v. Hallmark*

*Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

Signed this 2nd day of November, 2020.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   **Craig Sizer**
      Reg. No. 14046-104
      Coleman Low
      Federal Correctional Institution
      Inmate Mail/Parcels
      Post Office Box 1031
      Coleman, FL 33521

      **Richard Francis Della Fera**
      Richard F. Della Fera, PA
      Law Office of Richard F. Della Fera, PA
      500 East Broward Boulevard,
      Suite 1710
      Fort Lauderdale, FL 33394
      954-848-2872
      Fax: 954-848-2873
      Email: rdf@rdfattorney.com

      **Benson B. Weintraub**
      Law Office of Benson B. Weintraub
      1300 NE 3rd St. #5
      Fort Lauderdale, FL 33301
      954-464-1314
      Email: weintraub.benson@gmail.com

**Jeremy Brian Gordon**
Law Office of Jeremy Gordon, PLLC
1848 Lone Star Road
Suite 106
Mansfield, TX 76063
972-483-4865
Email: jeremy@gordondefense.com

**Roger Cruz**
United States Attorney's Office
99 N.E 4th Street
Miami, FL 33132
305-961-9207
Fax: 305 530-7976
Email: roger.cruz@usdoj.gov